Case No. 172175, 172239, and 172416 Dassault Systems v. Keith Childress Argument not to exceed 20 minutes per side. Mr. Mark Bendor, you may proceed for the appellant. Thank you. May it please the Court, Mark Bendor appearing on behalf of Mr. Childress. If I may, I'd like to reserve three minutes for rebuttal and to first express my appreciation for the additional five minutes which the Court has allowed. There are several issues presented. I will be pleased to answer any questions the Court might have, but otherwise I'm prepared to rest on my brief with regard to the Dassault Cross Appeal, as well as the issue of the trial court's limitation on the presentation of witness testimony to 10 minutes. And I would therefore want to focus on four issues. First, the Court's insistence on deciding the summary judgment motion and Rule 12b6 motion before discovery, actually before the commencement of any discovery, on behalf of Mr. Childress. Later, 800 documents were produced and depositions were allowed, but no depositions were permitted by Dassault or by order of the Court until after the summary judgment briefing, and the Court then later disallowed supplementation. And I think the question that then arises is, with this admittedly unusual procedure, what's the harm because of the 12b6 rulings which are ostensibly on the face of the pleadings and therefore not dependent upon discovery? And that may generally be true, but I think there are four things to bear in mind with regard to the discovery failures prior to briefing. First of all, this is a pro per case, and as we've cited at page 28 of our brief, several cases have held that when reviewing a 12b6 motion against a pro per litigant, the Court should also consider the later substantive filings, and in this case, there were several that came later but could not be considered. Then there is the ability to amend. Not unusually, when a motion to dismiss is brought under Rule 12b6, the plaintiff, or in this case the counterplaintiff, can seek amendment to conform with the evidence that they have obtained through the discovery process. That procedure was unavailable. Later, when Mr. Childress sought reconsideration of several rulings, the Court said he had already had his chance to do so, and therefore reconsideration would not be considered, but the truth of the matter is he never had an opportunity to respond to the motions with the discovery that was not produced until later. So that problem, which I think sort of derailed the appeal from the outset, ended up continuing to affect some of the other issues of the case. This is Judge Murphy. Can I ask you a question about just the merits of your abuse of process, setting aside the history of the procedure, how the ruling came about? I guess the way I'm thinking about it, and correct me if I'm wrong, imagine a patent owner, and a patent owner tells an infringer of the patent that I'm going to sue you for infringement unless you sign up for a license to use my patent. Under your theory, would that open up the patent owner to an abuse of process claim that the suit is not really about the infringement, but about the licensing, because the licensing is an ulterior motive for the suit? If you're talking about abuse of process, the essence of the tort is that you have used improper conduct during the course of the litigation to accomplish a non-litigation objective. In this particular case, we have evidence that Judge Zatkoff cited in his opinion to the effect that he recognized allegations by Mr. Childress that what occurred was false statements to the FBI covering up and failing to disclose that Mr. Childress had in fact purchased the licenses, failure to disclose that their own agents had developed this workaround procedure, and it's these improper sorts of conduct during the litigation course. So this is Eric, or Judge Murphy, let me cut you off. That's on one of the elements, but the second element is the ulterior motive, and the problem I'm having is I don't necessarily see that the ulterior motive to get your client to join the EPP, the education program, is much different than the ulterior motive of a patent owner to get an infringer to sign up for a license to use the patent. So it strikes me that it's not collateral. It's like the entire point of the suit, and so why wouldn't we just analogize to the patent context, to this context, they essentially wanted him to have the type of license that they have for training? Well, first of all, if that were truly their objective, one would expect to see a request for injunctive relief or some other equitable remedy to accomplish getting him to buy that. But what you can't do, in my view, under Michigan law of abusive process, is do improper things in the course of the litigation, and one of the, I think, ulterior to try to sell a license to somebody who's already bought one or to join an organization that the person doesn't want to join, that's not a litigation objective as such. It is an ulterior objective that maybe one of the side limits, for example, if you have a defamation suit, one of the things which occurs is vindication of your rights, and that's a legitimate part of the defamation action itself. But in my view, you can't use lawsuits to sell licenses or to compel people to join organizations, particularly when the First Amendment gives them a right to associate as they see fit. And so in that sense, it, in my view, is an ulterior purpose joining a club. A money damage lawsuit, its proper objective is to get money. But if you're trying to use it for an ulterior purpose, and if you're doing it with falsehoods and things of that nature, that falls within the abusive process ambit. Or at least, remember, for 12b6 purposes, a reasonable jury could make that finding, and I think that bears mention as well. Can I get just a factual clarification then? What is, the way I understand this developed is once they decided to do this educational program to implicate the training of their design program, they said that regular licenses had restrictions that said you can't use these licenses for commercial training and that you essentially have to get a license through the educational program. I mean, why is it wrong to view that educational program as essentially the license for training rather than, as you said, to join a club? Well, in this particular case, it's with somebody who you've already sold the license to without that restriction. So under the license that they had already established, there was no limitation on the ability of Mr. Childress to use his license to train people. In fact, the entire history was that was what he was doing. That was why he purchased the unrestricted license in the first place. So I hope that answers your question. But I think probably if you had somebody who didn't have a license before, it's certainly permissible to say we are selling these limited licenses and if you buy one of these limited licenses, here are the rules. But what you can't do is try to coerce somebody into forfeiting the benefits of the license they have already bought without restrictions. Interestingly, when Judge Battani granted reconsideration and got to the point of saying you haven't pleaded that the purpose was to coerce involvement, she looked only at the three allegations, the three paragraphs, under the caption abuse of process without looking at the other ones, which Judge Zachoff had already identified as pleading that purpose. And the verdict doesn't nullify this because, again, you're looking at the improper conduct that is involved. And I know you've addressed the ulterior purpose, and I hope I've answered that question appropriately. But certainly the court was in error in saying you failed to plead EPP. Now, bear in mind that after a 12B6 motion, had that continued, we then would have had the discovery that had been withheld for so long to be able to get to the specifics of what was their objective, was it to get the EPP, and all the other factual questions that would have arisen had we gotten past the 12B6 motion. We also have the 12B6 ruling of Judge Zachoff about tortious interference with business relations. And, again, we get into the alleged purpose of interfering with relations for the benefit of DeSoto's own new training division. And we also have acts that are improper. And the improper methods is the issue that seems to be in dispute. And, again, we have the tortious... Here's the civil jury instruction. Improper interference is conduct that's fraudulent. And we suggest that telling the FBI that he didn't have licenses when they knew he did have it is indeed fraudulent. It's not ethical. And so on the tortious interference facet, which is clearly related to but independent of abusive process, we have, I think, plenty of evidence of improper methods. And that's the gist of the tortious interference claim. And the instruction goes on to say, even if the conduct is lawful, and going to the FBI might be lawful, but not lying to them, or not, in this case, it was alleged, going to the court to secure a subpoena of federal records and then using that to obtain information that wasn't part of the motion to the court. So all of this, I think, goes to questions of intent and the like, which, for 12b-6 purposes, looking at the face of the complaint, broadly construed, and in an improper case, considering the evidence that's presented with it, at least could have allowed the case to go forward to discovery, which had been withheld up until that point. We then have the question of the court's refusal to conduct an evidentiary hearing with regard to the extraneous influences on the jury. Can I stop you there? I have a preliminary question on that, if you don't mind. I assume that because the way this case has reached us, the palpable defect standard would be the standard against which we review the district court's decision, because we actually only have jurisdiction over the motion for, what is it, reconsideration, rather than for the original order? I think you're right. It's an awkward review standard. Let me suggest this. It is true that there are abusive discretion and palpable defect barriers, but I think those are actually illusory, because if you have a legal error, if you've got a black-and-white legal question, is he entitled to a hearing or not, then it's virtually inherently an abusive discretion to allow knowingly a legally indefensible position to stand. I understand that that sort of underestimates the deferential standards, but I think when you ultimately get down to it, if in a case like this you have law which requires an evidentiary hearing, you can't hide that behind the barriers of palpable errors. It's either an error or it isn't, and if it's an error, it's a palpable error. I was kind of thinking about it like plain error review, and under plain error review, if it's a debatable legal question, that means there's no plain error. That's the plain component of plain error review, which extends to legal questions. Why would I be wrong in thinking palpable defect? It sounds a lot to me like it's analogous to plain error review. The time has ended. It seems to me just plain incongruous to say, yes, we are doing something that's legally unsupportable on the merits, but we are required to ignore the error for some other reason. I just have a hard time grappling with the concept of discretion or palpable error when there is indeed a legal error. It's either right or it's wrong. It's not sort of right or sort of wrong. Ms. Netheroad, did I hear you call time? Yes. With that, I'll save the remainder of my time for rebuttal unless the court has any additional questions. You'll have your rebuttal time. Thank you. You may begin, Mr. Forbis. Thank you. My name is Glenn Forbis from Harness Dickey. We represent the plaintiff D'Souza Systems in the case. Let me address the arguments that have been made in order.   The plaintiff, D'Souza Systems, is a plaintiff. The order that's under appeal is the November 25, 2015, order of Judge Batani granting dismissal of the abuse of process counterclaim on a motion for reconsideration. The fundamental thing that Judge Batani found in the order was that Mr. Childress, when pressed on the Rule 12C motion or 12B6 motion early on in the case, to elucidate his basis for the abuse of process counterclaim, alleged as the ulterior motive that it was to put him out of business. In other words, what he said was the ulterior motive in his papers was that D'Souza wanted to put him out of business. And Judge Batani found, based on the case law, the unequivocal Sixth Circuit case law, is that putting somebody out of business is a natural consequence under certain types of cases like this one. And therefore, as a matter of law, it could not be considered to be an ulterior motive for an abuse of process counterclaim. In view of that, that case... Mr. Forbus, this is Julia Gibbons. What about the alternative argument that it was trying to pressure him into buying the, for some reason, the name of whatever it is escapes me, but pressuring him into buying that package? Sure. So let me elucidate the facts here because a lot of the facts that were said by my opposing counsel were not correct. No, it's not a question of what the facts are. It's a question of what he alleged. Didn't he also allege that? Right. So he alleged in general allegations in his complaint without tying it to a counterclaim. First of all, he did not allege at all, right, in his response to the Rule 12c motion that pressuring him to join the EPP was a basis for his abuse of process counterclaim. Only in the motion for reconsideration did he bring that up for the first time, which the judge did not consider. Now, on the merits, the discussion of the EPP was in his counterclaim, but it was disconnected from the abuse of process counterclaim. In other words, there were 11 counterclaims and he generally alleged stuff about the EPP, but did not tie it to the abuse of process counterclaim. Now... This is Judge Daughtry. Counsel, this is Judge Daughtry. I'm here with somebody who's pro se. I mean, isn't there some wiggle room on this if, in fact, the allegations are in that complaint? Well, procedurally, Your Honor, this appeal is not about what's in the complaint, but what was alleged, what he brought to the table in response to the Rule 12c motion, and then whether that was the basis. So that's what's under appeal, is the motion for reconsideration, not the original order. All of that said, Your Honor, there's got to be some... As Judge Murphy said to begin with, what was the EPP offering? It's not a plausible position to have because offering him children to join the EPP was the natural consequence, right, if he wanted to continue to give training. He did not have the ability to give training to use a license to CATIA to train without joining the EPP because that's the licensing structure that was set up. So what would you say in response to the argument that opposing counsel suggested that even though the newer licenses had the restriction on you can't use this license for training, the license under which he operated, I recognize he only had one and he had 18 computers, but the license on which he operated did not have that restriction? Yeah. See, DeSoto never had any problem with Mr. Childress using his one single license that was unrestricted, which he purchased in 2001, to continue giving training on a single computer. The issue was that the EPP was nothing more than a pre-litigation offer that if he wants to continue giving training on 18 computers, the only way to do that is to engage in, to buy licenses for educational purposes, which are only available now at that time through the Educational Partner Program. And he was not being pressured or eliminated his ability to give training on a single computer, but only if he wanted to continue to give classes with 18, he could have either stopped giving training to classes of 18 people, or he could have joined the EPP where he could therefore get licenses to give education. It was a pre-litigation offer of settlement. Now, you know, the question, though, then is, even aside from that, what are the bad acts, then, that would corroborate or disclose this alleged ulterior motive? There are no facts, there are no allegations that DeSoto did anything that would be considered an abuse of process that would corroborate, that would disclose or reveal this alleged ulterior motive of asking him to join the EPP. There's no connection between all of these alleged so-called bad acts, none of which we agree with, but even on an allegation basis, there's no connection between them. So, that's with respect to the abuse of process counterclaim. If there's any other questions on that, I'd be happy to take them, otherwise I'll move on to the tortious interference. The tortious interference count is quite simple, quite frankly. The issue is, in the tortious interference count, is whether DeSoto did anything that was improper, because to be a tortious interference, the acts complained of have to be improper, and that means it can either be wrongful per se, which nobody says that DeSoto did anything wrongful per se, or it can be some act that's lawful but done with malice and unjustified law. And Judge Zatkoff found that DeSoto's claims for copyright and trademark infringement were justified in law. Judge Batani found the same thing, and the jury found exactly the same thing. And so, what DeSoto had, what Mr. Childress had alleged is that the bad acts that DeSoto had allegedly done was to make a complaint with the Department of Justice for the copyright infringement, and later to bring the civil lawsuit, and Mr. Childress said that they were wrong in effect. But we've got two judges in the jury all saying that these claims were justified in law. So the tortious interference was properly decided. What do you say in response to the argument that, okay, well, going to the FBI for potential infringement is one thing, but lying to the FBI is quite another, and he's alleged that you, I think he's alleging in his brief that you made misrepresentations to the FBI. So, from a factual standpoint, that's entirely incorrect, number one. Number two, he's saying in his brief, in his reply brief, that's the case, but he doesn't cite to anything in the allegations in the complaint, in the counterclaim. He doesn't say anything in, doesn't cite to anything in the briefing at the 12B6 or 12C stage where he alleged that as a basis for the tortious interference. This is all a pellet argument that never even was before the court on these motions in the district court level. But as a factual matter, it's just wrong. I mean, those allegations aren't there, and from an evidentiary standpoint, they're wrong. DeSoto never lied to the FBI about what licenses Mr. Childress had or didn't have. I'll move on to the next point that was raised, and that is the extraneous information issue. And the court is correct that this issue is before it on a palpable defect on a motion for reconsideration. And the issue here  Mr. Murphy, who's the juror who issued the declaration, he said that another juror had said that she had heard certain things about a settlement offer. And the key thing is is that in order to, you know, the first thing that the district court would have done... That's not what all Mr. Murphy said, is it? There was information about Mr. Childress's salary. Whether that's true or not, I have no idea. There was information about various things. Some jurors using information they had from their work and their consideration of the case. Just several things. Oh, the account of a settlement offer and Mr., you know, juror who said Mr. Childress was so stubborn and just various things. So it's... You gave a rather truncated view of what the extraneous information was. Is that not correct? There's three things, Your Honor, specifically that Mr. Murphy said. One is that a juror had relayed information about an alleged settlement offer. Two, that the juror said that he or she had heard that Mr. Childress made $750,000 a year. And then the Mr. Murphy referred to two jurors who were software developers. And according to, you know, what he said, that they, let's see, and specifically he said about the software developers, that they used their experience as software developers to try to convince the jury that Mr. Childress infringed on the sales copyright. Okay. So let me address, you know, the issue here is whether or not the district court should have had a Rummer evidentiary hearing on those, on that issue, on these issues. And, of course, the district court only has to have a Rummer evidentiary hearing if the evidence presented in the affidavit, and the only affidavit that was presented was Mr. Murphy's, on its face presents a likelihood that there's a culpable claim of extraneous information that presents a likelihood of affecting the jury verdict. And, in fact, you know, the burden is on the movement, is on Mr. Childress to make that proof. And there is, so let's look at what Mr. Murphy said. He said that none of this information, regardless of what it was, none of it affected his view of the case. Twice in his declaration, he said that notwithstanding this alleged information that was within the jury deliberation, that he didn't believe that Mr. Childress was guilty, that he intended, that he, in fact, disagreed with splitting the verdict. He disagreed with the jury's ultimate verdict, but he said that the reason he went along with it was because he didn't want to hold the jury up to come back on the following Monday to continue deliberation. Now, there is nothing in his declaration that suggests that any of this information would have affected the verdict. It didn't affect his opinion. Excuse me, counsel. Counsel, this is Judge Daughtry. But there was a statement that the unwillingness to settle had a negative impact on the jury's attitude toward Mr. Childress and influenced the jury's deliberation. Wouldn't you think that, just to be very careful about what that was, that you would want to talk to some other jurors? I mean, I think Mr. Murphy's position for why he went along with it is damaging enough. But I think if I was sitting on the bench presiding over that trial, I'd want to know, I'd want to hear from some other jurors, which is exactly what could have happened at a remand hearing. Well, Your Honor, this is, what is before this court is whether or not the district court abused her discretion. This is not an issue to be reviewed anew de novo. This was the judge's, Judge Botani's, decision to make, and the review is for abuse of discretion. Now, Judge Botani clearly found that on its face, Mr. Murphy was not influenced by the information that he was given. I mean, I don't think that that can be, whether his reason for going along with the verdict is a good one or a bad one is beside the point. He was not, he was not influenced by the information. He chose to go along for a different reason. Now, then he speculates and says that the jury was influenced by this other information. And that's all it said in the conclusionary summary format. He didn't, so there's no prima facie showing with any sort of facts or evidence as to, well, how did it influence them? What did it say? Who did what? And how did it influence the ultimate verdict? Well, wasn't there, excuse me counsel, wasn't there some indication that the jury discussed the fact that the reason they were still here was the reason why  was because he wouldn't settle. And the, you know, this bringing in the, the allegation that there was some sort of settlement offer was way out of the, out of the ballpark. I'm not, I'm not so concerned about the, the claim that a couple of the jurors talked about their software backgrounds. That's not bringing extraneous information in from outside. But when you start talking about a settlement offer and the refusal, his stubbornness in refusing to settle, and that's why they're having to undergo what was a couple of weeks of trial and might have to come back on Monday. Seems to me that that was specific enough to have gotten a hearing on this question. Well, your Honor, two things. What, what was said in this declaration, what Mr. Murphy said is in his declaration specifically, and I quote, he says, the jurors said that if Mr. Childress wasn't so stubborn, none of us would be here. And then he goes on to say the jurors statement had a negative impact on the jury's attitude towards Mr. Childress and influenced the jury's deliberations. So, again, he is making an inference or a supposition based on, you know, what other people are thinking, but with no facts, with no further description in his declaration, with nothing to, to back that up other than a conclusionary statement of a lay person juror who, by the way, was not himself influenced at all by this information. Well, let me, let me ask you this. Excuse me, counsel. The, this affidavit or statement or whatever that was produced for Mr. Murphy, who secured that? Mr. Childress. Acting pro se. Yes. Again, I, I think maybe we aren't recognizing that this was a, that this was a pretty good effort to expose something that went on in the jury room by somebody who didn't have a lawyer helping him do it. Well, Your Honor, again, I, I appreciate your, your view of it. I, I would say to you, though, again, that the standard of review here is whether or not there was an abusive discretion by Judge Batani in not having the hearing. And, and I think that the, the ruling of Judge Batani, you know, you can't look at it anew. You can't look at it  It has to be looked at with deference to the trial court who sat through the two weeks and many, many years of litigation between trial and years of litigation. And possibly, and counsel possibly didn't want to have to sit through another trial for two plus weeks. That's what concerns me. Well, I, I can't comment on what motivations that people have that are not, you know, explicit. I understand that. I wouldn't expect you to. But, you know, this thing, I'm interested to know because I don't, didn't, it didn't come to me with the record. What went on when there were about five years between the time Judge Batani got the case and the time of the trial. What was going on during that time? There was, to the best of my recollection, there was, the trial was set to go at one point in time shortly after she got it. And then about three weeks before the trial, Mr. Childress asked for an emergency adjournment because he was not prepared to go to trial. So then, by the time we got dates and stuff that was agreeable again, I think that might have been another eight or nine months out. And then there was another delay because of Judge Batani's schedule. So those are the types of things that went, went on during that time period. You have one minute remaining. So, Your Honor, I mean, I, the issue, again, I would like to comment on this situation as well. And the primary case that Mr. Childress relies upon in his brief on this jury issue is the Beverly Hills Fire case. And that's repeatedly relied upon. And I would like to make sure that the court understands it's very distinguishable from this case. In that case, there was no issue, there was no question that the jury was affected, the jury verdict was affected by the information that came into the jury. And that's because the juror who conducted an experiment outside of the jury and brought it back, told the jurors, and then he wrote a letter to the juror explaining that his basis for his vote in others was the experiment that he conducted. And that's not anywhere near this case in Mr. Murphy's declaration. Thank you, your honors. Yes, your honor, Mark Bendor. Addressing first the jury question, Mr. Murphy himself contacted Mr. Childress within a week. He himself realized how suspect these proceedings were. And one of them involved the allegation that he made $750,000 a year. Now, if my client had gone before the jury and said, I want you to see that DeSot has a net worth of $7 billion and I want you to    very important investment in the jury. And when counsel says that the jury's verdict disapproves the causes of action, let's say hypothetically that one had a very meritorious contract claim and bribed a juror. Everyone would say, I think, that that's an improper bit of litigation strategy regardless of the merits of the contract claim. And when we get to the question of abuse of process, when counsel says that Mr. Childress had not argued that initially, if you look at page I.D. 5598, Shajak's opinion before that specifically recites that allegation. Moreover, perhaps the reason that Mr. Childress didn't argue it as forcefully is because it really wasn't raised by DeSoto in their original Rule 12 B6 motion. If you look at and compare their original argument with their motion with their argument on reconsideration, Judge McCain, it's something like it's close to being argued. So if Mr. Childress didn't respond, maybe it's because the argument wasn't made on the first submission. Anything else the court has for your question, I'll be glad to answer. With that, I rest. Thank you.   we have the time for a few questions. The gentleman, we appreciate the argument that both of you have given, and we'll consider the matter carefully. Thank you. Thank you, Your Honor. Thank you, Your Honor.